**NORTHEAST FEDERAL CREDIT UNION, Plaintiff, Appellee,**

v.

**Anthony J. NEVES, Defendant, Appellant.**

No. 87–1799.

United States Court of Appeals, First Circuit.

Heard Dec. 9, 1987.

Decided Jan. 25, 1988.

Polly Haight Frawley, Asst. Atty. Gen., with whom James E. Tierney, Atty. Gen., Augusta, Me., was on brief, for appellant.

Daniel J. Harkinson, with whom C. Russell Shillaber and Cooper, Hall, Whittum & Shillaber, P.C., Rochester, N.H., were on ·brief, for appellee.

Before BREYER and SELYA, Circuit Judges, and LAFFITTE,* District Judge.

SELYA, Circuit Judge.

The State of Maine through its tax assessor, Anthony J. Neves, attempted to garnish certain accounts on deposit at Northeast Federal Credit Union (NEFCU) alleging that the depositors (mostly New Hampshire residents employed at the United States Naval Shipyard, Kittery, Maine)

* Of the District of Puerto Rico, sitting by designa-    tion.

owed state income taxes to Maine. NEFCU, a federally chartered credit union which operated a branch at the shipyard while maintaining its principal offices in New Hampshire, refused to honor the levies. NEFCU contended *inter alia* that a federal statute, 12 U.S.C. § 1768 (1982), barred Maine from attaching the deposits.[1]

When Maine sought to enforce the levies by commencing an action against NEFCU in a Maine state court, the credit union countered by filing a bill of interpleader in the United States District Court for the District of New Hampshire. It named as defendants not only Neves, but also the individual depositors identified in the notices of levy. NEFCU asked the federal tribunal to restrain prosecution of the state enforcement proceedings. Following a hearing, the district court held that 12 U.S.C. § 1768 protected the deposits in question from Maine's attempts to garnish them. *Northeast Federal Credit Union v. Neves*, 664 F.Supp. 640, 642–43 (D.N.H.1987) (*NEFCU I*). The district judge reasoned that the state, in the idiom of section 1768, was endeavoring to impose a "duty or burden of collecting or enforcing the payment" of state taxes on the credit union, and that

section 1768 "grants NEFCU exemption from any attempts at levy or collection of [Maine's state income] tax by the Maine taxing authorities." *Id.* at 643. Accordingly, the court ordered "Neves, his agents, servants, or employees, and any state taxing authorities of the State of Maine . . . to cease and desist any attempts at imposition of a levy [upon NEFCU] seeking to collect or enforce payment of any Maine state taxes. . . ." *Id.*

■ An immediate appeal ensued. 28 U.S.C. § 1292(a)(1). At oral argument, the district court's subject matter jurisdiction was called into question. Because this issue had neither been vetted below nor briefed on appeal,[2] we requested supplemental filings. Having received these addenda and thoroughly reviewed the record, we find that the district court was without jurisdiction to hear and determine the action.

## I. MY FAIR LEVY

■ According to NEFCU's complaint, jurisdiction was premised upon the federal

---

**1.** The statute, part of the Federal Credit Union Act, 12 U.S.C. §§ 1751–1795, reads as follows:

The Federal credit unions organized hereunder, their property, their franchises, capital, reserves, surpluses, and other funds, and their income shall be exempt from all taxation now or hereafter imposed by the United States or by any State, Territorial, or local taxing authority; except that any real property and any tangible personal property of such Federal credit unions shall be subject to Federal, State, Territorial, and local taxation to the same extent as other similar property is taxed. Nothing herein contained shall prevent holdings in any Federal credit union organized hereunder from being included in the valuation of the personal property of the owners or holders thereof in assessing taxes imposed by authority of the State or political subdivision thereof in which the Federal credit union is located; but the duty or burden of collecting or enforcing the payment of such a tax shall not be imposed upon any such Federal credit union and the tax shall not exceed the rate of taxes imposed upon holdings in domestic credit unions.

12 U.S.C. § 1768 (1982).

**2.** Indeed, the parties had conceded the existence of such jurisdiction before the district court. *See NEFCU I*, 664 F.Supp. at 642. Be that as it

may, subject matter jurisdiction is a bit like pregnancy: it either exists or it does not. If the latter, jurisdiction cannot be conferred by agreement or concession of the parties, or by estoppel. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982); *California v. LaRue*, 409 U.S. 109, 112 n. 3, 93 S.Ct. 390, 394 n. 3, 34 L.Ed.2d 342 (1972), *reh'g denied*, 410 U.S. 948, 93 S.Ct. 1351, 35 L.Ed.2d 615 (1973). *Cf. Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 70, 60 S.Ct. 44, 47, 84 L.Ed. 85 (1939) (in suit under federal Interpleader Act, court must raise jurisdictional question on its own motion). As to the district court's further surmise that diversity of citizenship between NEFCU and Neves might be "sufficient for jurisdictional purposes," *NEFCU I*, 664 F.Supp. at 642 n. 7, we disagree. As we show in the text, *see infra* Part I, for the purposes at hand Neves has no citizenship. That being so, we need express no definitive opinion upon the seemingly dubious proposition that the citizenship of a complainant-stakeholder, like NEFCU, bears at all on diversity jurisdiction in a section 1335 suit. *See Treinies*, 308 U.S. at 70–73, 60 S.Ct. at 47–48 (citizenship of disinterested stakeholder irrelevant to jurisdictional inquiry).

interpleader statute, 28 U.S.C. § 1335(a) (1987), which provides in pertinent part:

(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more ... or being under any obligation written or unwritten to the amount of $500 or more, if

(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property ...; and if (2) the plaintiff has deposited such money or property ... into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court [upon appropriate conditions].

*Id.*

In this case, the "adverse claimants" to the funds are, on the one hand, the depositors, and on the second hand, the tax assessor. *See Treinies,* 308 U.S. at 70–73, 60 S.Ct. at 47–48. Their claims are of the kind envisioned by the statute; though they "do not have a common origin, ... [they] are adverse to and independent of one another." 28 U.S.C. § 1335(b). It is not disputed that the depositors, by and large, are citizens of New Hampshire. Their antagonist, Neves, was portrayed below as a citizen of Maine, ergo, "diverse." But, this blithe assertion glosses over the realities of the litigation.

No one has any quarrel with Neves individually. The credit union sues him simply in his capacity as the state's tax assessor, for actions undertaken in his official capacity and in the course of his official duties. By exactly the same token, Neves' claim of entitlement to the deposits is not *personal* to him; he seeks the monies not for his own enrichment, but to apply against the depositors' indebtedness to the state. The immediate relief sought, the restraining order, operated to enjoin the "state taxing authorities." *See NEFCU I,* 664 F.Supp. at 643. The ultimate relief obtainable, the

depositors' access to the account balances free and clear of the levy, can be obtained only at Maine's expense.

Where, as here, all of the claims are made against a government official acting purely in a representative role, the suit must be regarded as one against the sovereign. *See Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978) (official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent"); *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 516 (1st Cir.1987) (official-capacity suit "tantamount to a suit against the [sovereign]"). This being so, the finding of diversity of citizenship entered below is imperilled. As the Court held long ago:

A State is not [itself] a citizen. And, under the Judiciary Acts of the United States, it is well settled that a suit between a State and a citizen or a corporation of another State is not between citizens of different States; ....

*Postal Telegraph Cable Co. v. Alabama,* 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). *See also Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 1800, 36 L.Ed.2d 596 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction.").

The rule holds true whether the state is a party *de jure,* in its own name, or becomes a party *de facto,* because an alter ego— say, a department of state government or an official-capacity state actor—is made a party. "For the purpose of diversity jurisdiction, the determinative factor is whether the state is the real party in interest." *Krisel v. Duran,* 386 F.2d 179, 181 (2d Cir.) (per curiam), *cert. denied,* 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1967). *See also State Highway Comm'n of Wyoming v. Utah Construction Co.,* 278 U.S. 194, 199– 200, 49 S.Ct. 104, 105–06, 73 L.Ed. 262 (1929); *George R. Whitten, Jr., Inc. v.*

*State University Construction Fund,* 493 F.2d 177, 179–80 & n. 2 (1st Cir.1974). The test is pretty much the same as that used to determine whether a "state is the real, substantial party in interest and [thus] entitled to invoke its sovereign immunity," *Ford Motor Co. v. Dep't of Treasury of Indiana,* 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), or to assess whether an agency "is sufficiently an arm of the state to qualify for the protection of the Eleventh Amendment." *Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Authority,* 744 F.2d 880, 886 (1st Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 965, 83 L.Ed.2d 970 (1985).

In this case, we need not dawdle over the point. Revenues are the lifeblood of governments. The state's division of taxation is an integral part of Maine's governmental apparatus. The taxes in question are owed to the state, not to Neves personally. The levy which the assessor strains to enforce, if it proves to be productive, will inure exclusively to the benefit of the public fisc. As Professor Henry Higgins might have chirped, "the gain from strain is plainly that of Maine."

█ The Court's decision in *Worcester County Trust Co. v. Riley,* 302 U.S. 292, 58 S.Ct. 185, 82 L.Ed. 268 (1937), is instructive in this regard. There, a federal interpleader action was brought on behalf of a decedent's estate against revenue officers of California and Massachusetts to resolve conflicting death tax claims. The Court unanimously held that the case, though nominally against individuals, sought to affect defendants' actions as state officers and was in reality a suit against the two states. *Id.* at 299–300, 58 S.Ct. at 187–88. *Riley* is closely in point. We conclude, without serious pause, that Maine is the real party in interest in this interpleader action. Therefore, Neves' citizenship as an individual is of no moment; as an official-capacity defendant, he has *no* citizenship for jurisdictional purposes. There is an absence of even the minimal diversity as between "adverse claimants" necessary to animate 28 U.S.C. § 1335.

## II. HANDS ACROSS THE BORDER

█ In the latest round of filings, NEFCU abandons its original jurisdictional hypothesis and attempts to come at its problem from a new direction. In brief, the credit union argues that it should be allowed to amend its complaint to allege jurisdiction under 28 U.S.C. § 1331 in lieu of 28 U.S.C. § 1335.[3] NEFCU now says that since it maintains the depositors' accounts at its New Hampshire headquarters, Maine's effort to snare the funds is a constitutionally impermissible reach across state lines. Thus, the "federal question" in this case becomes "Maine's attempted extraterritorial assertion of power," Appellee's Supplemental Brief at 4, a flexing of the state's muscles which NEFCU views as inimical to the Due Process Clause of the Fourteenth Amendment.

There are enormous difficulties with the credit union's belated change of direction. We note that NEFCU proposes more than a merely formal amendment which would salvage jurisdiction over its original claim; rather, it advances an entirely new claim, only tangentially related to the original. In a very real sense, this latest initiative stands the original action on its head: by some thaumaturgical feat of resupination, NEFCU seeks magically to transmogrify itself from a neutral into a belligerent. That is simply too drastic a switch.[4] Second, the request leapfrogs the district court, which has never been accorded an

---

3. 28 U.S.C. § 1331 limns what is commonly known as "federal question" jurisdiction. The statute states:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331 (1987).

4. The complaint as filed alleged no violation of the federal Constitution or laws. Indeed, it manifested no independent claim of right on plaintiff's part. By choosing to sue under 28 U.S.C. § 1335, the credit union disclaimed any stake in the deposits. As the Court has observed, recourse to the Interpleader Act "effectually demonstrates the applicant's disinterestedness as between the claimants and as to the property in dispute, an essential in interpleaders." *Treinies,* 308 U.S. at 72, 60 S.Ct. at 48 (footnotes omitted).

opportunity to consider the plaintiff's neoteric theory. And third, the clear policy barring federal declaratory relief against state taxing measures must be considered —especially where (as in this case) adequate recourse is available in state courts for a determination of such claims. *See, e.g., Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 300–01, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943); *United States v. State Tax Comm'n,* 481 F.2d 963, 972–73 (1st Cir.1973). Yet, as lethal as such shortcomings may be, we need not dwell on them. The long and the short of it is that the request is a futile one.

In the instant case, NEFCU's newly-emergent claim of federal right is nothing more than an anticipatory defense to Maine's state court action to enforce the levies. And it is settled beyond peradventure that federal question jurisdiction will not lie if the asserted federal right "is in reality in the nature of a defense to a threatened [state court] action." *Public Service Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 248, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952). *See also Franchise Tax Board of California v. Construction Laborers Vacation Trust,* 463 U.S. 1, 15–17 & n. 14, 103 S.Ct. 2841, 2849–50 & n. 14, 77 L.Ed.2d 420 (1983). The rule has force whether the state court enforcement action is, as here, actually pending, or as in *Wycoff,* merely "threatened." *See Colonial Penn Group, Inc. v. Colonial Deposit Co.,* 834 F.2d 229, 233 (1st Cir.1987). It applies to all suits—whether for declaratory or injunctive relief—which represent "a defensive maneuver" in response to a state court enforcement action. *Id.* at 236. The federal courts cannot be used as a launching pad from which to "engage in a preemptive strike" aimed at exploding the state suit. *Greenfield and Montague Transportation Area v. Donovan,* 758 F.2d 22, 26 (1st Cir.1985).

We are mindful of the erudite analysis of this subject recently essayed by Judge Coffin for a panel of this court. *See Colonial Penn, supra,* at 232–36. We cannot improve upon it, but need only follow its lead. Neves' action to enforce the levy in the Maine state court did not in any way "itself involve a claim under federal law." *Wycoff,* 344 U.S. at 248, 73 S.Ct. at 242. No "right or immunity created by the Constitution or laws of the United States [constituted] an element, and an essential one, of the [tax assessor's] cause of action." *Gully v. First National Bank in Meridian,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936). To be sure, the credit union would likely assert its ostensible rights under the Due Process Clause as a defense to Maine's claims—but that stratagem is altogether immaterial. As we have said, "federal jurisdiction is not established merely by the presence of a federal defense." *Colonial Penn, supra,* at 233.[5]

*Federal Reserve Bank of Boston v. Comm'r of Corporations and Taxation,* 499 F.2d 60 (1st Cir.1974), relied on by plaintiff, is not to the contrary. The bank —unlike NEFCU—was an agency of the United States, and obtained jurisdiction for its federal court challenge to Massachusetts' refusal to grant it a certain sales tax exemption by invoking the special jurisdictional grant contained in 12 U.S.C. § 632. Section 632 has no application to federally-chartered credit unions, and there is no comparable provision in the Federal Credit Union Act.

It would not pay to belabor the point. It is indisputable that the action which Neves brought in the Maine court is based entirely on state law, and that NEFCU's proposed "federal question" suit is "merely a defensive maneuver in response to [the] state law action." *Colonial Penn, supra,* at 236. Here, precisely as in *Colonial Penn,* the relief which the proponent of the federal question seeks "is nothing more

---

**5.** Even if the constitutional argument proved to be the center of attention in the state enforcement case, "there is no reason to think that the state courts cannot decide federal statutory issues in a satisfactory manner." *Colonial Penn, supra,* at 236 (citing *Greenfield and Montague Transportation Area,* 758 F.2d at 27). *Cf. United*

*States v. State Tax Comm'n,* 481 F.2d at 974 n. 12 (absent some special statutory provision, "[s]tate courts have concurrent jurisdiction with the federal courts in the enforcement of federal law"). The same holds true of federal constitutional issues.

than a request that [the opposing party] be enjoined from maintaining its state court action." *Id.* at 236. The credit union's suggested amended complaint is thus revealed for what it is: a defense to Neves' enforcement action. Accordingly, NEFCU's invitation to strike out in a new direction must be declined. Though leave to amend a complaint is often granted with liberality, that is not the case when the futility of the proposed amendment is apparent. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Klamath–Lake Pharmaceutical Association v. Klamath Medical Service Bureau,* 701 F.2d 1276, 1292–93 (9th Cir.), *cert. denied,* 464 U.S. 822, 104 S.Ct. 88, 78 L.Ed.2d 96 (1983). Federal courts need not tiptoe through empty formalities to reach foreordained results. The quick fix which the credit union suggests here is no "fix" at all; it is patently inadequate to trigger the federal courts' jurisdiction.

### III. CONCLUSION

 We sum up briefly. The jurisdiction which plaintiff posited under 28 U.S.C. § 1335 was bogus because true diversity of citizenship was lacking. The district court never obtained jurisdiction over the subject matter of the suit. Nor has plaintiff shown that the jurisdictional defect can be corrected. Certainly, the resultant gap cannot be bridged by a jury-rigged amendment which fails to bring 28 U.S.C. § 1331 legitimately into play. We need go no further.[6]

*The injunction and judgment entered below are vacated, and the case is remanded to the district court with instructions to dismiss the interpleader action for want of federal jurisdiction.*

Costs in favor of appellant (Neves).

---

6. Because of the jurisdictional deficiency, we do not review the merits of the decision below. We note in passing, however, that 12 U.S.C. § 1768 does not prohibit the imposition of *any* enforcement-related "duty or burden" upon a federal credit union. That portion of the statute sweeps much more narrowly; it prohibits only the imposition of a "duty or burden of collecting

or enforcing the payment" of *"such* a tax," meaning state or local taxes assessed upon, and measured by, "the valuation of the personal property of the owners." *Id.* (emphasis supplied). The statute has no apparent application to a state's efforts to collect income taxes of the conventional sort.