858 F.2d 1376
 13 Fed.R.Serv.3d 159
 MORONGO BAND OF MISSION INDIANS,
Plaintiff/Counterclaim-Defendant/Appellant,
v.
CALIFORNIA STATE BOARD OF EQUALIZATION; Richard Nevins, in
his official capacity as Chairman of the State Board of
Equalization; Conway H. Collis, in his official capacity as
a member of the State Board of Equalization; Ernest J.
Dronenburg, Jr., in his official capacity as a member of the
State Board of Equalization; William M. Bennett, in his
official capacity as a member of the State Board of
Equalization, Defendants/Appellees,
Clive Miller, Defendant/Counterclaimant/Appellee.
MORONGO BAND OF MISSION INDIANS,
Plaintiff/Counterclaim-Defendant/Appellee,
v.
CALIFORNIA STATE BOARD OF EQUALIZATION, et al., Defendants,
and
Clive Miller, Defendant/Counterclaimant/Appellant.
MORONGO BAND OF MISSION INDIANS, Plaintiff/Appellee,
v.
CALIFORNIA STATE BOARD OF EQUALIZATION, Defendant/Appellant.
 Nos. 87-2320, 87-2371 and 87-2393.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 10, 1988.
Decided June 14, 1988.
As Amended Sept. 20, 1988.
 
 George Forman, Alexander & Karshmer, Berkeley, Cal., for plaintiff/counterclaim-defendant/appellant/appellee Morongo Band of Mission Indians.
 Julian O. Standen, Asst. Atty. Gen., San Francisco, Cal., for defendants/appellant/appellees California State Bd. of Equalization.
 Robert C. Moest, Fisher & Moest, Los Angeles, Cal., for defendant/counterclaimant/appellant/appellee Clive Miller.
 Appeal from the United States District Court for the Northern District of California.
 Before BROWNING, ALARCON and NORRIS, Circuit Judges.
 ALARCON, Circuit Judge:
 
 I. INTRODUCTION
 
 1
 The question presented in this case is whether the district court properly exercised subject matter jurisdiction over an Indian tribe's action in the nature of interpleader against a member of the tribe and a state tax authority. We hold that it did not. Accordingly, we vacate the district court's judgment in all respects and remand with instructions that the case be dismissed.
 
 II. BACKGROUND
 
 2
 Plaintiff/Counterclaim-Defendant/Appellant/Cross-Appellee Morongo Band of Mission Indians (the Band) leased Indian trust land beneficially owned by Defendant/Counterclaimant/Appellee/Cross-Appellant Clive Miller (Miller), a member of the Band. The lease was never approved by the Secretary of the Interior (the Secretary).
 
 
 3
 On August 16, 1983, Defendant/Appellee/Cross-Appellant California State Board of Equalization (the Board) levied on funds held by the Band and allegedly owed to Miller as rent under the lease. On December 28, 1983, the Band deposited the disputed funds into the registry of the district court and instituted an action in the nature of interpleader. The Band asserted no claim to the deposited funds.
 
 
 4
 On September 26, 1986, the district court granted the Band leave to amend its complaint to assert its own claim to the funds under the theory that the lease with Miller was invalid for lack of approval by the Secretary.[1] Miller thereupon filed a Counterclaim alleging claims for unpaid rent under the lease, for the reasonable value of the Band's use of his property, for bad faith, and for violations of the Indian Civil Rights Act, 25 U.S.C. Sec. 1302.
 
 
 5
 The district court granted summary judgment for the Band on its claim that the lease was invalid. The court also granted summary judgment for Miller on his claim for the reasonable value of the Band's use of his property. All parties appealed.
 
 
 6
 The briefs initially filed in this court did not discuss the question of federal subject matter jurisdiction over interpleader actions. We called for supplemental briefing on the question. Each of the parties contends that the district court properly exercised jurisdiction pursuant to the general federal question statute, 28 U.S.C. Sec. 1331 (1982).
 
 III. ANALYSIS
 
 7
 The fact that none of the parties contests the district court's jurisdiction does not, of course, relieve us of our responsibility to determine whether the court's exercise of jurisdiction was proper. The parties have no power to confer jurisdiction on the district court by agreement or consent. Sullivan v. First Affiliated Securities, Inc., 813 F.2d 1368, 1374 (9th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987); Janakes v. United States Postal Service, 768 F.2d 1091, 1095 (9th Cir.1985). If the district court had no jurisdiction over the subject matter, the action should have been dismissed, regardless of the parties' preference for an adjudication in federal court.
 
 
 8
 The district court, believing that it had jurisdiction based on the original interpleader claim, granted the Band leave to file an amended complaint realleging the interpleader claim and adding three claims for declaratory relief. In determining federal court jurisdiction, we look to the original, rather than to the amended, complaint. Subject matter jurisdiction must exist as of the time the action is commenced. See Mollan v. Torrance, 22 U.S. (9 Wheat.) 536, 538, 6 L.Ed. 154 (1824) (jurisdiction "depends upon the state of things at the time of the action brought"); Nuclear Eng'g Co. v. Scott, 660 F.2d 241, 248 (7th Cir.1981) ("Jurisdictional questions are answered by reference to the time of the filing of an action...."), cert. denied, 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); Mobil Oil Corp. v. Kelley, 493 F.2d 784, 786 (5th Cir.) (jurisdiction "is determined at the outset of the suit"), cert. denied, 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974).[2] If jurisdiction is lacking at the outset, the district court has "no power to do anything with the case except dismiss." 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3844, at 332 (1986) (footnote omitted); accord United States v. Boe, 543 F.2d 151, 159 (C.C.P.A.1976) (when subject matter jurisdiction is lacking, the district court "ha[s] no power to do anything, other than to dismiss the action," and any order other than to dismiss is a nullity).[3] Accordingly, we must examine the Band's original complaint to determine whether the claim alleged therein was one over which the district court had jurisdiction. If jurisdiction was lacking, then the court's various orders, including that granting leave to amend the complaint, were nullities.
 
 
 9
 The complaint originally filed by the Band alleged one claim--interpleader. The facts alleged to support the claim were as follows: The Band is a federally-recognized Indian tribe. It is the beneficial owner of unallotted trust lands within the Morongo Indian Reservation, which is located in Riverside County, California. Miller is a member of the Band and resides on its reservation. He is the beneficial owner of allotted parcels of trust land located within the reservation. On April 26, 1983, the Band and Miller executed a written lease giving the Band the right to use a specified portion of Miller's land to conduct bingo games. The lease provided that the Band would pay rent to Miller from the proceeds of the games. On or about August 16, 1983, in an effort to collect state cigarette taxes owed by Miller, the Board served the Band with a Notice of Levy on all property in the Band's possession belonging to Miller, including funds being held by the Band as rent. Miller subsequently demanded that the Band pay him the rent in question, contending that the rent was exempt from the Board's levy under 25 U.S.C. Sec. 410[4] and the doctrine of federal preemption of the field of leases of Indian trust land. Faced with conflicting claims to the rent, the Band deposited $292,000 into the registry of the district court and instituted the present action.
 
 
 10
 In its complaint, the Band did not assert any right to the deposited funds. Rather, it characterized the funds as "rents due to MILLER for the months of September through December, 1983." By way of relief on its claim for interpleader, the Band prayed that the district court "[o]rder the defendants to interplead and settle between themselves their rights to the rents due under the said lease; ... [o]rder that plaintiffs are discharged from all liability with respect to the rent payments deposited with the Court ...; [and] [o]rder that the rents deposited with the Court be paid to the party whom the Court shall adjudge entitled to them...."
 
 
 11
 The complaint alleged subject matter jurisdiction under 25 U.S.C. Sec. 345 and 28 U.S.C. Secs. 1331, 1335, 1353, 1362, 2201, and 2202. Contrary to the Band's assertion, jurisdiction is unavailable under the Federal Interpleader Act, 28 U.S.C. Sec. 1335 (1982). That section requires that two or more of the adverse claimants to the interpleaded funds be "of diverse citizenship as defined in section 1332 of this title." 28 U.S.C. Sec. 1335(a)(1) (1982); see State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530, 87 S.Ct. 1199, 1203, 18 L.Ed.2d 270 (1967) (section 1335 "has been uniformly construed to require ... diversity of citizenship between two or more claimants"). According to the Band's complaint, the Board "is an agency of the State of California charged by law with the assessment and collection of state taxes." As an agency of the State of California, the Board has no "citizenship" for the purposes of section 1332. See Moor v. County of Alameda, 411 U.S. 693, 717, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."); Postal Tel Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894) ("A State is not a citizen. And, under the Judiciary Acts of the United States, it is well settled that a suit between a State and a citizen or a corporation of another State is not between citizens of different States...."). Hence, the adverse claimants--Miller and the Board--are not of diverse citizenship.[5]
 
 
 12
 In addition to section 1335, Fed.R.Civ.P. 22 provides for interpleader actions in the federal courts. Rule 22, however, is merely a procedural device; it confers no jurisdiction on the federal courts. Gelfgren v. Republic Nat'l Life Ins. Co., 680 F.2d 79, 81 (9th Cir.1982); see Fed.R.Civ.P. 82 (federal rules shall not be construed to extend or limit subject matter jurisdiction). Accordingly, an interpleader action under Rule 22 must fall within some statutory grant of jurisdiction.[6] Gelfgren, 680 F.2d at 81; St. Louis Union Trust Co. v. Stone, 570 F.2d 833, 835 (8th Cir.1978). We shall proceed to consider the statutory grants of jurisdiction on which the Band has sought to rely.[7]
 
 
 13
 Excluding section 1335, which is inapplicable to the present case for the reasons discussed above, the Band alleged subject matter jurisdiction under 25 U.S.C. Sec. 345, and 28 U.S.C. Secs. 1331, 1353, 1362, 2201, and 2202. Title 28 contains no section numbered 345. We assume that the Band intended to allege jurisdiction under 25 U.S.C. Sec. 345. That section confers the district courts with jurisdiction over "any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty...." 25 U.S.C. Sec. 345 (1982). In short, section 345 provides jurisdiction over cases in which an Indian's interest in allotted trust land is at issue. See F. Cohen, Handbook of Federal Indian Law 314 (1982) ("The basic requisite for jurisdiction [under 25 U.S.C. Secs. 345-346] is an issue concerning Indian ownership of all or a portion of an allotment under federal restrictions.") (footnote omitted). Similarly, 28 U.S.C. Sec. 1353 confers the district courts with "jurisdiction of any civil action involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any Act of Congress or treaty." 28 U.S.C. Sec. 1353 (1982).
 
 
 14
 The Band's complaint did not dispute Miller's interest in or entitlement to the leased premises. On the contrary, in characterizing the deposited funds as "rents due to MILLER," the complaint assumed the validity of Miller's interest and his authority to enter into a lease with respect to that interest. Sections 345 and 1353, therefore, are inapplicable to the present case.
 
 
 15
 The Band is also precluded from grounding jurisdiction on the Declaratory Judgment Act, 28 U.S.C. Secs. 2201-2202 (1982 & Supp. III 1985). The Declaratory Judgment Act merely creates a remedy in cases otherwise within the court's jurisdiction; it does not constitute an independent basis for jurisdiction. Fiedler v. Clark, 714 F.2d 77, 79 (9th Cir.1983) (per curiam).
 
 
 16
 The remaining bases for jurisdiction alleged by the Band are 28 U.S.C. Secs. 1331 and 1362. Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. Sec. 1331 (1982). Section 1362 provides: "The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. Sec. 1362 (1982). Under both sections, jurisdiction depends on whether the Band's interpleader action "arises under" federal law. See Gila River Indian Community v. Henningson, Durham & Richardson, 626 F.2d 708, 714 (9th Cir.1980) (declining to interpret "arising under" language in section 1362 more broadly than identical language in section 1331), cert. denied, 451 U.S. 911, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981).
 
 
 17
 The Supreme Court has explained that an action arises under federal law if that law creates the cause of action, American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), or if a substantial question of federal law is a necessary element of plaintiff's cause of action, Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 199-202, 41 S.Ct. 243, 244-46, 65 L.Ed. 577 (1921). Moreover, the Court has long and consistently held that the federal-law element must appear on the face of plaintiff's well-pleaded complaint. Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10, 103 S.Ct. 2841, 2846-47, 77 L.Ed.2d 420 (1983). This means that a plaintiff may not establish federal jurisdiction by asserting in its complaint that the defendant will raise a federal-law defense to the plaintiff's claim, id. at 13-14, 103 S.Ct. at 2848-49, or by including in its complaint allegations of federal-law questions that are not essential to its claim, id. at 10, 103 S.Ct. at 2846.
 
 
 18
 As a result of the well-pleaded complaint rule, "few interpleader complaints have been found to qualify for federal question jurisdiction. Interpleader is a procedural device available to a stakeholder to resolve a dispute that exists primarily between the defendant claimants. The stakeholder's claim is typically one seeking discharge and is difficult to characterize as asserting either federal or state rights." Banco de Ponce v. Hinsdale Supermarket Corp., 663 F.Supp. 813, 816 (E.D.N.Y.1987) (citation omitted). But see St. Louis Union Trust Co., 570 F.2d at 835 (finding federal question jurisdiction over interpleader action in which plaintiff sought, inter alia, injunction against enforcement of federal tax lien).
 
 
 19
 The Band's complaint alleges that Miller contends that the Board's levy is barred by 25 U.S.C. Sec. 410 and by the doctrine of preemption, and that the Board argues to the contrary. These allegations are surplusage; they merely anticipate the arguments likely to be advanced by the defendants against each other. Neither section 410 nor the preemption doctrine forms any part of the Band's own well-pleaded claim. Accordingly, the foregoing allegations must be disregarded in assessing whether the complaint supports federal jurisdiction. See Gardner v. Schaffer, 120 F.2d 840, 842 (8th Cir.1941) (per curiam) (finding no federal question jurisdiction over interpleader action, notwithstanding plaintiff's allegation that defendant relied on federal statute in asserting claim to disputed funds); Cowan v. United States, 172 F.Supp. 291, 293-94 (S.D.N.Y.1959) (finding no federal question jurisdiction over interpleader action, notwithstanding plaintiff's allegation that defendants' respective rights to interpleaded funds were governed by federal statute); cf. Gelfgren, 680 F.2d at 81 (where plaintiff's state court action was properly removed, federal court had jurisdiction over defendant's cross-complaint for Rule 22 interpleader).
 
 
 20
 Once we disregard the Band's superfluous allegations, we find the complaint insufficient to raise a federal question. The Band claims for itself no right or immunity under any federal law, nor does it allege a federal cause of action.
 
 
 21
 This does not, however, conclude our analysis. The Sixth Circuit, in a thorough and well-reasoned opinion, has examined the issue of federal question jurisdiction over interpleader actions under Rule 22. See Bell & Beckwith v. United States, 766 F.2d 910 (6th Cir.1985). We find that court's analysis helpful, particularly because Bell & Beckwith involved facts similar to those underlying the present case. There, the Internal Revenue Service (IRS) levied on an account held by a stock broker. The broker then instituted an interpleader action, naming as defendants the IRS and the party claiming ownership of the account. Id. at 911.
 
 
 22
 The Sixth Circuit observed that the complaint failed to assert a federal claim against the defendants. Id. at 912. The court noted, however, that "federal question jurisdiction exists in those cases in which the plaintiff's claim, though itself not raising a federal question, asserts a defense to a claim that would raise a federal question and that defendant could have asserted in a coercive action." Id. Recognizing that this principle has been invoked primarily in declaratory judgment actions, the court cogently explained why the principle should also apply to Rule 22 interpleader actions:
 
 
 23
 [A] plaintiff may use an interpleader action [under Rule 22] to anticipate and accelerate a coercive action by the defendant. The issue to be adjudicated remains the same, but interpleader may be used "to reach an early and effective determination of disputed questions." 7 C. Wright & A. Miller [ & M. Kane] Federal Practice and Procedure Sec. 1702 (1972).... Thus, the purpose of, and procedural advantage provided by, an interpleader action may be the same as that of the declaratory judgment action--the actions "enabl[e] a defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconvenience." Thomas v. Shelton, 740 F.2d 478, 485 (7th Cir.1984). In interpleader actions as in declaratory judgment actions, federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant.
 
 
 24
 Id. at 914.
 
 
 25
 In an interpleader action, as in an action for declaratory relief, the plaintiff seeks an adjudication of claims that the defendants threaten to assert against the plaintiff. Whether the action is styled as one for interpleader or for declaratory relief, the cause of action litigated is not that of the plaintiff but that of the defendants. See Lowe v. Ingalls Shipbuilding, 723 F.2d 1173, 1179 (5th Cir.1984) (in an action for declaratory judgment, "the underlying cause of action which is ... actually litigated is the declaratory defendant's, not the declaratory plaintiff's"). Federal jurisdiction over both types of actions is proper if the cause(s) of action anticipated by the plaintiff's suit would arise under federal law. Bell & Beckwith, 766 F.2d at 914; Banco de Ponce, 663 F.Supp. at 817 ("[F]ederal question jurisdiction exists if at least one of the threatened actions fairly alleged in the interpleader complaint arises under federal law.").
 
 
 26
 Applying the foregoing principles to the case before it, the Sixth Circuit concluded that state law would have been determinative of each of the coercive actions anticipated by the interpleader claim. 766 F.2d at 915-16. Accordingly, the court ordered dismissal of the action for lack of jurisdiction. Id. at 917.
 
 
 27
 The First Circuit employed a similar analysis in Northeast Fed. Credit Union v. Neves, 837 F.2d 531 (1st Cir.1988). There, the State of Maine levied on certain accounts on deposit in a New Hampshire-based credit union. Maine then instituted a state court action to enforce the levies. The credit union responded by instituting an interpleader action in the United States District Court for the District of New Hampshire, naming as defendants Maine's tax assessor and the owners of the accounts in question. Id. at 531-32. Plaintiff contended that a federal statute barred Maine from levying on the deposits. Id. at 532.
 
 
 28
 Because the claimants to the funds in question were not of diverse citizenship, jurisdiction was improper under section 1335. Id. at 534. The court proceeded to consider whether jurisdiction could be premised on section 1331. The court concluded that federal question jurisdiction was unavailable, because the federal questions asserted by the plaintiff were simply defenses to Maine's state-law claim for enforcement of the tax levy:
 
 
 29
 [Plaintiff's] newly-emergent claim of federal right is nothing more than an anticipatory defense to Maine's state court action to enforce the levies. And it is settled beyond peradventure that federal question jurisdiction will not lie if the asserted federal right "is in reality in the nature of a defense to a threatened [state court] action." The rule has force whether the state court enforcement action is, as here, actually pending, or ... merely "threatened." It applies to all suits--whether for declaratory or injunctive relief--which represent "a defensive maneuver" in response to a state court enforcement action. The federal courts cannot be used as a launching pad from which to "engage in a preemptive strike" aimed at exploring the state suit.
 
 
 30
 Id. at 535 (citations omitted).
 
 
 31
 To complete our analysis, therefore, we consider whether the coercive actions anticipated by the Band's complaint would arise under federal law. If so, jurisdiction is proper under section 1331.
 
 
 32
 Had the Band not instituted the present action, Miller would have sought recovery of the disputed rents by instituting an action against the Band for breach of lease.[8] Breach of lease is a cause of action under state, not federal, law. The fact that the lease was entered into under authority conferred by federal statutes would not transform Miller's state-law breach of lease claim into one arising under federal law. See Gila River Indian Community, 626 F.2d at 714-15 (Indian tribe's claim against private parties for breach of commercial contract did not arise under federal law); Littell v. Nakai, 344 F.2d 486, 488 (9th Cir.1965) (no federal jurisdiction over action by general counsel of Indian tribe against chairman of tribal council to enjoin alleged interference with counsel's performance of retainer contract, notwithstanding that contract had been authorized under federal law and approved by federal officials), cert. denied, 382 U.S. 986, 86 S.Ct. 531, 15 L.Ed.2d 474 (1966). The Band's likely federal-law defenses--sovereign immunity and lack of approval of the lease by the Secretary of the Interior--would not be part of Miller's well-pleaded complaint for breach of lease and, thus, would not support federal jurisdiction over Miller's state-law claim.[9]
 
 
 33
 The Band's interpleader action also anticipated a coercive action by the Board to enforce its tax levy against rent owed to Miller in the possession of the Band. The anticipated enforcement action would not arise under federal law. See Franchise Tax Bd., 463 U.S. at 13, 103 S.Ct. at 2848 (state tax board's action to enforce levy against ERISA-covered vacation benefit plan did not arise under federal law; "federal law becomes relevant only by way of a defense to an obligation created entirely by state law"); Neves, 837 F.2d at 535 (interpleader action that anticipated enforcement action by state tax authority did not arise under federal law). Federal questions, e.g., whether the Band is immune from a state tax levy under the federal common law doctrine of tribal sovereign immunity, would be injected into the Board's state-law action only by way of defense.
 
 
 34
 Finally, the Band's action anticipated a coercive action by the Board against Miller, for the collection of state taxes. A state's action to collect state taxes is plainly one arising under state, not federal, law. Again, federal-law issues would arise only in defense.
 
 IV. CONCLUSION
 
 35
 We have concluded that jurisdiction over the Band's complaint in interpleader was improper under 28 U.S.C. Sec. 1335, because the adverse claimants are not of diverse citizenship; improper under 25 U.S.C. Sec. 345 and 28 U.S.C. Sec. 1353, because Miller's right to an allotment of land is not at issue; improper under 28 U.S.C. Secs. 2201-2202, because those sections do not grant jurisdiction to the district courts; and improper under 28 U.S.C. Secs. 1331 and 1362, because the Band's well-pleaded complaint alleges no claim under federal law and the coercive actions anticipated by the Band's complaint would arise under state law. Accordingly, the district court had no subject matter over the Band's action. The district court's judgment in this action is VACATED and the matter is REMANDED with instructions that it be DISMISSED for lack of jurisdiction. On dismissal of the action, the funds deposited into the district court's registry by the Band shall be returned to the Band. The parties shall bear their own costs.
 
 
 
 [1]
 The Band was required to obtain leave of court before filing its amended complaint because the defendants had long before answered the original complaint. See Fed.R.Civ.P. 15(a)
 
 
 [2]
 The only case cited by Miller in which the court analyzed whether jurisdiction existed on the basis of an amended complaint is Boelens v. Redman Homes, Inc., 759 F.2d 504 (5th Cir.1985) [Boelens II ]. In Boelens, the original complaint alleged four claims which appeared to arise under federal law. Plaintiffs later amended their complaint to eliminate all but one of such claims, and the case proceeded to trial. On appeal from the final judgment, the Fifth Circuit ruled that plaintiffs' remaining claim did not support federal jurisdiction. Boelens v. Redman Homes, Inc., 748 F.2d 1058, 1071 (5th Cir.1984) [Boelens I ]. The court remanded the case with directions that it be dismissed for lack of subject matter jurisdiction. Id. On petition for rehearing, the court rejected plaintiffs' argument that jurisdiction should have been determined by the original, not the amended, complaint. Boelens II, 759 F.2d at 507-08
 The principal distinction between this matter and Boelens is that in Boelens, the Fifth Circuit concluded that while the district court had jurisdiction at the outset, it was lost because the plaintiff voluntarily amended the complaint. In the present case, the district court lacked jurisdiction at the outset. Moreover, Boelens in no way conflicts with our ruling that a district court is powerless to grant leave to amend when it lacks jurisdiction over the original complaint. In fact, Boelens fully supports our conclusion. The Fifth Circuit held that the district court should have ordered dismissal because the amended complaint failed to support federal jurisdiction. Boelens I, 748 F.2d at 1071; see also Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1065 (9th Cir.1979) (where complaint filed in state court action that was later removed to federal court failed to state a federal question, "no federal jurisdiction existed to entertain a later amendment to the complaint").
 
 
 [3]
 When the district court has jurisdiction over the action at the outset but the complaint inadequately alleges jurisdiction, the court may grant leave to amend the defective allegations. See 28 U.S.C. Sec. 1653 (1982) ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). Section 1653 provides a remedy for defective allegations only; "it does not provide a remedy for defective jurisdiction itself." Field v. Volkswagenwerk AG, 626 F.2d 293, 306 (3d Cir.1980)(2-1); accord Brennan v. University of Kansas, 451 F.2d 1287, 1289 (10th Cir.1971) (section 1653 empowers the courts to correct "defects of form, not substance") (footnote omitted). As we explain below, the defect in the present case is one of substance--the case does not arise under federal law. The district court, therefore, had no power to grant the Band leave to amend its complaint
 
 
 [4]
 Section 410 provides, in pertinent part:
 No money accruing from any lease or sale of lands held in trust by the United States for any Indian shall become liable for the payment of any debt of, or claim against, such Indian contracted or arising during such trust period ... except with the approval and consent of the Secretary of the Interior.
 25 U.S.C. Sec. 410 (1982).
 
 
 [5]
 The Band also named as defendants certain individual members of the Board. Each of these individuals was expressly sued "in his official capacity as a member of the [Board]." A claim alleged against a state officer acting in his official capacity is treated as a claim against the state itself. See Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); Monell v. Department of Social Services, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978) (official-capacity suits "represent only another way of pleading an action against an entity of which an officer is an agent"). We, therefore, disregard the citizenship of the individual Board members in assessing jurisdiction under section 1335. See Northeast Federal Credit Union v. Neves, 837 F.2d 531, 534 (1st Cir.1988) (defendant state tax assessor, sued under section 1335 in his official capacity, "has no citizenship for jurisdictional purposes")
 
 
 [6]
 The mere fact that an Indian tribe is a party to the action is insufficient to establish jurisdiction. See 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3579, at 255 (1984) ("Although the federal government has long had a special relation to the American Indian, there is no jurisdiction in the federal courts to hear a case merely because an Indian or an Indian tribe is a party to it.") (footnote omitted)
 
 
 [7]
 "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 106 S.Ct. 3229, 3233 n. 6, 92 L.Ed.2d 650 (1986). Because the Band did not purport to base jurisdiction on 28 U.S.C. Sec. 1332 (diversity of citizenship), we express no opinion as to whether jurisdiction would be proper under that section
 
 
 [8]
 The Counterclaim filed by Miller in response to the Band's amended complaint alleged, inter alia, a violation of the Indian Civil Rights Act (ICRA), 25 U.S.C. Sec. 1302 (1982). The Board argues that such coercive claim arises under federal law, hence the district court had jurisdiction over the Band's action. Claims for damages are not cognizable under the ICRA. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106 (1978); Trans-Canada Enterprises, Ltd. v. Muckleshoot Indian Tribe, 634 F.2d 474, 476 (9th Cir.1980). Even if Miller's claim were cognizable, it is not a claim to rent under the lease, hence it is not one of the coercive actions anticipated by the Band's interpleader claim
 Miller argues that his coercive action would have arisen under 25 U.S.C. Sec. 345 and 28 U.S.C. Sec. 1353. As noted above, these sections confer the district courts with jurisdiction over suits in which an Indian's interest in allotted trust land is at issue. At 1382. These sections do not authorize jurisdiction over an action to recover rents owing under a lease of a building, even when the building happens to sit on allotted trust land. The cases on which Miller relies are distinguishable in that each was an action to protect an Indian's right to, or interest in, allotted trust land. See Begay v. Albers, 721 F.2d 1274, 1276 (10th Cir.1983) (suit by individual Indians to cancel certain allegedly forged deeds purporting to convey their fee interests in allotted tracts; plaintiffs sought recovery of possession and an order quieting their beneficial title); Loring v. United States, 610 F.2d 649, 650 (9th Cir.1979) (suit by individual Indians seeking compensation for right-of-way over their allotted lands taken by federal government and municipality; federal statutes protected Indian allottees from improvident grants of rights-of-way); Scholder v. United States, 428 F.2d 1123, 1129 (9th Cir.) (suit by individual Indians seeking injunctive relief to prevent federal government from charging against the Indians' trust lands the costs of constructing a lateral irrigation line; charges amounted to a lien on the lands, which impaired Indians' interests therein), cert. denied, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970).
 Our understanding of the scope of jurisdiction conferred by Secs. 345 and 1353 is confirmed by the Supreme Court's pronouncement on the subject in United States v. Mottaz, 476 U.S. 834, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986). The Court in Mottaz, citing Scholder, declared that Sec. 345 contemplates two types of suits: those seeking the issuance of an allotment, and those involving an Indian's interest in or right to an allotment once he has acquired it. Id. at 845, 106 S.Ct. at 2231. Miller's coercive action against the Band would have fallen into neither category.
 In Keechi v. United States, 604 F.Supp. 267 (D.D.C.1984), also cited by Miller, the court ruled it had jurisdiction under Secs. 345 and 1353 over an individual Indian's suit seeking to prevent the IRS from enforcing a levy on royalties derived from an oil and gas lease of plaintiff's allotted trust land. To the extent Keechi can be read to mean that Secs. 345 and 1353 provide a basis for jurisdiction over any suit in which an Indian seeks to collect or preserve income derived from leases of allotted trust lands, the opinion is inconsistent with the foregoing authorities. Keechi, however, need not be read so broadly. The funds at issue there were not rents due under the lease of a capital improvement but royalties earned from oil production, an activity that depletes the land's resources and, thus, reduces the value of the allottee's interest in the land.
 
 
 [9]
 In Barona Group v. American Management & Amusement, Inc., 824 F.2d 710 (9th Cir.1987), we exercised jurisdiction, without discussion, over an action in which an Indian tribe sought a declaration that a bingo management agreement was null and void under 25 U.S.C. Sec. 81 for lack of approval by the Secretary. The tribe's claim for declaratory relief was coupled with a claim for breach of contract and damages, over which we clearly had jurisdiction. Id. at 714; see 25 U.S.C. Sec. 81 (1982) (granting jurisdiction over action by the United States, as trustee, seeking recovery of money paid by Indian tribe pursuant to unapproved contract relative to tribe's land); Moe v. Confederated Salish & Kootenai Tribes, 425 U.S. 463, 472, 96 S.Ct. 1634, 1641, 48 L.Ed.2d 96 (1976) (under 28 U.S.C. Sec. 1362, federal court has jurisdiction over action by tribe alleging "the kind of claims that could have been brought by the United States as trustee, but for whatever reason were not so brought"). We, therefore, had pendent jurisdiction over the tribe's claim for declaratory relief. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (defining federal pendent jurisdiction over state-law claims). Unlike the plaintiff in Barona Group, the Band in the present case did not allege a claim under section 81 or under any other federal law