KANSAS PUBLIC EMPLOYEES
RETIREMENT SYSTEM,
Plaintiff,

v.

BOATMEN'S FIRST NATIONAL BANK
OF KANSAS CITY, Defendants.

No. 96–4018–DES.

United States District Court,
D. Kansas.

Oct. 28, 1997.

Frank M. Rice, Schroer, Rice, P.A., Tope-
ka, KS, Eugene I. Pavalon, Geoffrey L. Gif-
ford, Pavalon & Gifford, Chicago, IL, Robert
F. Coleman, Eugene Schiltz, Kenneth Philip
Ross, Robert F. Coleman & Associates, Chi-
cago, IL, Terry R. Saunders, Chicago, IL,
Robert Williams, Susman, Buehler & Wat-
kins, Chicago, IL, for Plaintiff.

John M. Edgar, Ronald L. Holt, Juliet A.
Cox, Bryan Cave LLP, Kansas City, MO,
Lynn S. McCreary, Bryan Cave LLP, Over-
land Park, KS, for Defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plain-
tiff's Motion to Remand to the District Court
of Shawnee County, Kansas (Doc. 69), pursu-
ant to 28 U.S.C. § 1447(c).

## I. INTRODUCTION

In December 1994, after receiving notice
that the Kansas Public Employees Retire-
ment System (hereinafter "KPERS") intend-
ed to file suit against it in Kansas state court
in connection with the $65,000,000 loss that
arose from KPERS' investment in Home
Savings and Loan of Kansas City, F.A., Boat-
men's First National Bank of Kansas City
(hereinafter "Boatmen's") filed an action
against KPERS in the United States District
Court for the Western District of Missouri
seeking a declaratory judgment that it was
not liable to KPERS.[1] The court preliminar-
ily enjoined KPERS from filing suit against
Boatmen's in another court for any claims

---

1. Boatmen's originally sought to intervene in an-
other KPERS' lawsuit pending in the Western
District of Missouri against other parties involved
in its Home Savings investment. *Kansas Pub.
Employees Retirement Sys. v. Reimer & Koger
Associates, Inc.,* 92–0922–CV–W–9 (W.D.Mo.).
That case, originally filed in state court in Shaw-
nee county, Kansas, was removed to the Western
District of Missouri by the Resolution Trust Cor-
poration, a third-party defendant, under 12
U.S.C. § 1441a(1). *See generally, Kansas Pub.
Employees Retirement Sys. v. Reimer & Koger
Associates, Inc.,* 61 F.3d 608 (8th Cir.1995).
Boatmen's requested and was granted a stay of
proceedings on its application to intervene in
that case when it filed a preemptive declaratory
judgment action before a different district judge.

relating to Boatmen's role as a trustee under debentures issued by Home Savings and purchased by KPERS. KPERS brought an interlocutory appeal from the preliminary injunction order, arguing that the district court lacked subject matter jurisdiction over KPERS, an alter ego of the state of Kansas; that Boatmen's declaratory judgment action was a preemptive strike and, under the first-filed rule, should not result in an injunction prohibiting KPERS from prosecuting its claims in the forum of its choice; and that the district court violated Federal Rule of Civil Procedure 52(a) by failing to set forth findings of fact and conclusions of law which constituted the grounds for the injunction.

On June 7, 1995, the Eight Circuit remanded the case to the district court, directing it to enter an order containing detailed findings of fact and conclusions of law concerning the preliminary injunction and the issue of its subject matter jurisdiction, and retained jurisdiction over the appeal. *Boatmen's First National Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.*, 57 F.3d 638 (8th Cir.1995). On January 12, 1996, the district court entered an order finding that it did have subject matter jurisdiction over the declaratory judgment action under 28 U.S.C. § 1332, but vacating its preliminary injunction because Boatmen's suit was filed in anticipation of a lawsuit by KPERS and must be viewed as a preemptive strike. Upon receipt of the district court's order the parties stipulated to dismiss as moot KPERS' interlocutory appeal of the preliminary injunction order.

On January 17, 1996, KPERS filed this action in the District Court of Shawnee County, Kansas. On January 30, 1996, Boatmen's filed a notice of removal in this court, alleging diversity of citizenship as grounds for removal. On April 25, 1996, the district court in Missouri dismissed Boatmen's declaratory judgment action because it was duplicative of the case pending before this court.

## II. DISCUSSION

■■■ A civil action is removable from state to federal court only if the plaintiff could have brought the action in federal court originally. 28 U.S.C. § 1441(a). The federal district court must remand an action to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction...." 28 U.S.C. § 1447(c). The "defendant has the burden of demonstrating that the court has original jurisdiction," *Asten v. Southwestern Bell Telephone Co.*, 914 F.Supp. 430, 432 (D.Kan.1996) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)), and the court "must strictly construe the federal removal statute." *Asten*, 914 F.Supp. at 432 (citing *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986); *Fajen v. Foundation Reserve Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir.1982); *J.W. Petroleum, Inc. v. R.W. Lange*, 787 F.Supp. 975, 977 (D.Kan.1992)). "Any doubts concerning removability must be resolved in favor of remanding the cases to state court." *Asten*, 914 F.Supp. at 432 (citing *J.W. Petroleum, Inc.*, 787 F.Supp. at 977).

It is well established that a state is not a 'citizen' for purposes of diversity jurisdiction. If suit is brought against an agency which is merely an alter ego of the state, it follows that federal jurisdiction is also lacking. On the other hand, if the agency is an independent one, separate and distinct from the state, the district court can properly proceed to the merits.

*Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir.1983) (citations omitted). The test is "the same as that used to determine whether a 'state is the real, substantial party in interest and [thus] entitled to invoke its sovereign immunity,' or to assess whether an agency is sufficiently an arm of the state to qualify for the protection of the Eleventh Amendment.'" *N.E. Fed. Credit Union v. Neves*, 837 F.2d 531, 534 (1st Cir.1988) (citations omitted).

The Tenth Circuit has outlined the following factors to be considered in determining whether a state agency may assert Eleventh Amendment immunity: 1) "the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and

control exercised by the state;" and 2) "the extent of financing the agency receives independent of the state treasury and its ability to provide for its own financing." *Haldeman v. State of Wyoming Farm Loan Bd.*, 32 F.3d 469, 473 (10th Cir.1994). Furthermore, the Tenth Circuit recognized that the most important factor in determining immunity is whether the money judgment would be paid by the state treasury. *Id. See Hess v. Port Auth. Trans–Hudson Corp.*, 513 U.S. 30, 48, 115 S.Ct. 394 404–05, 130 L.Ed.2d 245 (1994) (noting that the motivation for the Eleventh Amendment was preventing state treasuries from paying federal court judgments and that this factor has been recognized as the most important by a majority of the Circuits).

■ The first factor to be considered is whether KPERS is an autonomous agency. In making this determination, the court must consider the characterization of the agency by state law and the extent of guidance and control exercised by the state. 32 F.3d at 473. Kansas law defines KPERS as "a body corporate and an instrumentality of the state of Kansas." KAN. STAT. ANN. § 74–4903 (1992). The purpose of KPERS is not only to provide a retirement system for public employees, but also to effect "economy and efficiency in the administration of governmental affairs." KAN. STAT. ANN. § 74–4901 (1992). In addition, KPERS is bound by a number of limitations and oversight requirements, including the following: 1) all seven members of the KPERS' board were appointed by the governor during the time when the investments at issue were made,[2] KAN. STAT. ANN. § 74–4905 (1992); 2) KPERS must present an annual report regarding its financial condition to the governor, chairperson of the legislative coordinating council, secretary of the senate, and the chief clerk of the house of representatives, KAN. STAT. ANN. § 74–4907(2) (Supp.1996); 3) the KPERS' trust fund is maintained in the state treasury, KAN. STAT. ANN. § 74–4921(1) (Supp. 1996), and the state treasurer retains custody of all funds and securities held by KPERS,

KAN. STAT. ANN. § 74–4921(9)(a); 4) limitations have been placed on the type, nature, amount, and manner of KPERS' investments, KAN. STAT. ANN. § 74–4921(5); 5) the post auditor must audit KPERS' accounts annually, KAN STAT. ANN. § 74–4907a(3) (1992); and 6) all KPERS' board meetings must be open to the public, Kan. Stat. Ann. § 74–4909(4) (Supp.1996). In addition to the above restrictions on KPERS, the Kansas Supreme Court has recently held that the investment function of KPERS is a governmental function, rather than a proprietary function. *Kansas Pub. Employees Retirement Sys. [KPERS] v. Reimer & Koger Assoc., Inc.*, 262 Kan. 635, 941 P.2d 1321, 1343 (1997). Thus, the court finds that KPERS is not an autonomous agency.

The second factor that the court must consider is the extent of financing that KPERS receives independent of the state treasury and its ability to provide its own financing. *Haldeman*, 32 F.3d at 473. The most important consideration for this portion of the Eleventh Amendment immunity analysis is whether a judgment against KPERS would be paid out of the state treasury. *Id. See Hess, supra.* However, KPERS is not asserting immunity under the Eleventh Amendment. Instead, KPERS asserts that it is an alter ego of the state of Kansas and, as such, it is not a "citizen" for the purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

The defendant argues that KPERS has historically paid adverse judgments out of the KPERS fund, and, as a result, the state treasury would not be required to pay for a judgment rendered against KPERS. However, since KPERS is the plaintiff in this matter, there would not be a money judgment rendered against KPERS which may have to be paid from the state treasury. On the other hand, the issue in this case revolves around a $65 million loss that KPERS sustained as a result of its Home Savings investment. The Kansas Supreme Court addressed the effect of this loss as part of its

---

**2.** Since July 1, 1993, KPERS has nine members on its Board of Trustees. Four members are appointed by the governor; one is appointed by the president of the senate; one is appointed by the speaker of the house of representatives; two are elected by the system's members and retirees; and one is the state treasurer. KAN. STAT. ANN. § 74–4905(a) (Supp.1996).

analysis of whether the investment function of KPERS was governmental or proprietary in nature. *KPERS,* 941 P.2d at 1341. The Kansas Supreme Court determined that "the investment of KPERS funds is necessary to promote the public welfare generally and to satisfy the contractual and taxation obligations of the State of Kansas, the school districts, the municipalities, and the other governmental entities to their employees." *Id.* In analyzing this situation with KPERS, the Kansas Supreme Court found that "in reality KPERS is seeking to recover millions of dollars which the public will otherwise be forced to pay in higher taxes." *Id.* at 1342.

Although the defendant seems to argue that KPERS can recover its loss through its investments and that the state of Kansas can not be forced to cover the losses by paying higher employer contributions, the fact remains that the state and the other governmental entities are under a contractual obligation to pay the benefits promised to their retirees. Thus, the KPERS fund will need to recover the loss in some way, and it seems most likely that the state will have to bear a large portion of that burden, as recognized by the Kansas Supreme Court. As a result, the increased burden on the state treasury caused by this loss would certainly "touch the concerns—the States' solvency and dignity—that underpin the Eleventh Amendment." *Hess,* 513 U.S. at 52, 115 S.Ct. at 406.

The court concludes that KPERS is an alter ego of the state of Kansas, and, therefore, is not a "citizen" for the purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332. As a result, the court lacks subject matter jurisdiction, and this matter must be remanded to the District Court of Shawnee County, Kansas. The court notes that this decision is consistent with two other cases decided in this district. *Am. Int'l Specialty Lines Ins. Co. v. Reimer & Koger Assoc., Inc.,* 874 F.Supp. 324, 326 (D.Kan.1995) (holding that KPERS is an arm of the state for Eleventh Amendment purposes); *Reiger v. KPERS,* 755 F.Supp. 360, 361 (D.Kan. 1990) (finding that the Eleventh Amendment applies to lawsuit against KPERS).

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's Motion to Remand to the District Court of Shawnee County, Kansas, pursuant to 28 U.S.C. § 1447(c) (Doc. 69) is granted.