**BANCO DE PONCE, Plaintiff,**

**v.**

**HINSDALE SUPERMARKET CORP., and New York State Department of Health, Defendants.**

**No. 86 C 1988.**

United States District Court,
E.D. New York.

June 26, 1987.

Eduardo F. Lopez, P.C., New York City, for plaintiff.

Figueredo & Fabian, Jackson Heights, N.Y. (Manuel Fabian, of counsel), for Hinsdale Supermarket Corp.

Robert Abrams, Atty. Gen., State of N.Y., New York City (Joel Graber, Asst. Atty. Gen., of counsel), for New York State Dept. of Health.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, Banco de Ponce ("Banco"), brings this interpleader action pursuant to Federal Rule of Civil Procedure 22, providing, in pertinent part, that persons "having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability."

Banco asks the court to determine the ownership of $70,885.10 in food coupon proceeds generated under the Special Supplemental Food Program, 42 U.S.C. § 1786. That program, sometimes called the WIC Program because it benefits women, infants and children, is part of the Child Nutrition Act, 42 U.S.C. § 1771, *et seq.*, and is administered by the United States Department of Agriculture's Food and Nutri-

tion Service pursuant to federal regulations. *See* 7 C.F.R. Part 246.

Under the WIC Program, state and local agencies receive federal grants to fund the distribution of food coupons to pregnant, postpartum and breastfeeding women, infants and young children from low-income families. Defendant New York State Department of Health ("Health Department") distributes the coupons in New York and authorizes retailers to accept the coupons in exchange for certain foods.

Authorized retailers, or vendors, can redeem the coupons by depositing them into their bank accounts using a special WIC number. The bank conditionally credits the retailer's account until the proceeds are cleared through the distributing agency. Defendant Hinsdale Supermarket Corp. ("Hinsdale") maintained such an account at Banco. The interpleaded fund represents the contents of that account and consists solely of WIC coupon proceeds.

The dispute began when, by letter dated March 27, 1986, the Health Department notified Banco that Hinsdale was using a fraudulent WIC number and demanded that Banco freeze the account and turn over its contents to the extent of about $30,000. Banco responded by freezing the entire account, but did not remit any proceeds to the Health Department. On April 15, 1986, Banco received a letter from Hinsdale's attorneys demanding release of the funds and threatening suit.

Banco maintained the freeze until June 12, 1986, when it deposited the $70,885.10 in this court and commenced this interpleader action against Hinsdale and the Health Department. The complaint also named the United States Department of Agriculture as a defendant. By stipulation the action has since been discontinued as against it.

Hinsdale's answer claims the funds and counterclaims for damages, alleging that Banco's freezing of the account constitutes conversion. The Health Department's answer challenges Hinsdale's claim to the funds, asserts a cross-claim, and questions the court's subject matter jurisdiction.

Banco has moved for an order dismissing the Health Department's jurisdictional defense and Hinsdale's counterclaim, discharging Banco from this action, and awarding it attorney's fees.

Hinsdale crossmoves for judgment declaring its right to the funds, awarding damages on its counterclaim against Banco, dismissing the Health Department's crossclaim, and denying Banco's request for attorney's fees.

The Health Department opposes Hinsdale's motion, contending that there is an issue of fact as to Hinsdale's right to any of the funds, and also opposes Banco's application for attorney's fees as excessive.

I

The first issue is whether the court has subject matter jurisdiction. Plaintiff contends that there is both diversity of citizenship jurisdiction under 28 U.S.C. § 1332 and federal question jurisdiction under 28 U.S.C. § 1331.

Unlike statutory interpleader, 28 U.S.C. § 1335, which establishes federal court jurisdiction where two or more adverse claimants are of diverse citizenship, Federal Rule of Civil Procedure 22 provides no independent jurisdictional basis. A Rule 22 interpleader action based on diversity must satisfy the requirements of 28 U.S.C. § 1332, namely, the plaintiff or stakeholder must be of diverse citizenship from each defendant or claimant. *See* 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1710, at 538–40 (1986).

■ Here, there is no diversity jurisdiction. All parties are New York citizens. To show diversity Banco appears to rely on its incorporation in Puerto Rico. But, as the complaint states on its very face, its principal place of business is in New York. Banco is thus both a citizen of Puerto Rico and New York, *see* 28 U.S.C. § 1332(c).

Banco also claims that there is federal question jurisdiction under 28 U.S.C. § 1331 because the interpleaded funds were established and dispensed pursuant to the federal WIC Program.

To base jurisdiction on 28 U.S.C. § 1331, the action must be one "arising under the Constitution, laws, or treaties of the United States." The deceptively simple words "arising under" mask a variety of issues often making it difficult to determine whether an action falls within or without the court's jurisdiction. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 8, 103 S.Ct. 2841, 2845, 77 L.Ed.2d 420 (1983). Over the years since the first version of section 1331 was enacted in 1875, Act of March 3, 1875, ch. 137, § 1 *et seq.*, 18 Stat. 470, the Supreme Court has articulated two standards to determine whether an action is one "arising under" federal law. *West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 192 (2d Cir.1987). One looks to whether federal law "creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916) (per Holmes, J.). Where state law creates the cause of action, the other standard asks whether a "substantial" question of federal law is a necessary element of that cause of action. *Franchise Tax Board, supra,* 463 U.S. at 9, 13, 103 S.Ct. at 2846, 2848; *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199–202, 41 S.Ct. 243, 245–246, 65 L.Ed. 577 (1921).

In applying both these standards one useful doctrine that the Supreme Court has adopted is the so-called "well-pleaded" complaint rule, under which " 'what necessarily appears in the plaintiff's statement of [its] own claim' " determines whether or not an action arises under federal law. *Franchise Tax Board, supra,* 463 U.S. at 10, 103 S.Ct. at 2846 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724–725, 58 L.Ed. 1218 (1914)). Thus generally a federal question "must appear on the face" of the complaint. 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3566, at 83 (1984). A complaint that anticipatorily challenges a federal defense that a defendant may raise, or asserts that federal law deprives defendant of a possible defense, is insufficient to invoke jurisdiction. *Franchise Tax Board,*

*supra,* 463 U.S. at 10, 103 S.Ct. at 2846–2847.

The effect of this rule is that few interpleader complaints have been found to qualify for federal question jurisdiction. *See* 7 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1710, at 547 (1986). Interpleader is a procedural device available to a stakeholder to resolve a dispute that exists primarily between the defendant claimants. The stakeholder's claim is typically one seeking discharge and is difficult to characterize as asserting either federal or state rights.

A few courts have accepted interpleader actions based on federal question jurisdiction. *See, e.g., Gelfgren v. Republic National Life Insurance Co.*, 680 F.2d 79 (9th Cir.1982); *St. Louis Union Trust Co. v. Stone*, 570 F.2d 833 (8th Cir.1978). But only one has engaged in a thorough analysis of the rationale, analogizing an interpleader action to one for a declaratory judgment. *See Bell & Beckwith v. United States (IRS)*, 766 F.2d 910 (6th Cir.1985).

In declaratory judgment actions, federal question jurisdiction may exist if the character of the defendant's threatened action necessarily involves a claim of federal right. *See Franchise Tax Board, supra,* 463 U.S. at 19 & n. 19, 103 S.Ct. at 2851 & n. 19; *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 242–243, 97 L.Ed. 291 (1952) (dictum); *West 14th Street Commercial Corp., supra,* 815 F.2d at 194; *Bell & Beckwith, supra,* 766 F.2d at 913, and cases cited. An interpleader stakeholder threatened by conflicting claims asks the court to determine which of several disputed claims should prevail. A declaratory judgment action seeking that determination would serve as well, although in an interpleader action the stakeholder can obtain a discharge. In effect the stakeholder's pleading provisionally draws into question the validity of the threatened claims against it of each of the claimants. If at least one of these claims arises under federal law, there is no apparent reason in policy to reject federal question jurisdiction because the stakeholder

has asked for a discharge in addition to a declaration.

■ This court therefore holds that federal question jurisdiction exists if at least one of the threatened actions fairly alleged in the interpleader complaint arises under federal law. Application of this holding requires scrutiny not only of the threatened claims of both Hinsdale and the Health Department against Banco, but also of the dispute between the defendants. This follows because both defendants' claims against Banco seek title to the interpleaded funds to the exclusion of the other. *Cf. Bell & Beckwith, supra,* 766 F.2d at 915 (court analysis looked at all possible suits by claimants against the stakeholder and by claimants against each other).

■ As noted above, a claim can arise under federal law either because federal law creates the cause of action or a substantial question of federal law is a necessary element of a state cause of action. *Merrell Dow Pharmaceuticals Inc. v. Thompson,* — U.S. —, 106 S.Ct. 3229, 3233, 92 L.Ed.2d 650 (1986); *West 14th Street Commercial Corp., supra,* 815 F.2d at 192. Banco's complaint arguably pleads both theories. Its assertion that "[e]ach of the defendants lays claim to the funds being interpleaded herein, pursuant to 7 CFR Part 246" suggests a cause of action arising directly under federal law. The complaint's further allegation that federal question jurisdiction exists because the "funds being interpleaded were created by virtue of a federal statute" does not state explicitly what jurisdictional consequences follow. But the court construes the pleading to allege that any claim to the funds, including one under state law, must turn on some construction of federal law.

The complaint does not detail the threatened claims of defendants, but it recites facts that implicitly define them, and the other papers in the case provide further clarification. Hinsdale appears to claim that it is an authorized food vendor under the WIC Program regulations and that the Health Department's attempt to obtain the funds violates those regulations. Alterna-tively, this claim can be construed as contending that the Health Department has improperly denied Hinsdale authorized vendor status. Hinsdale also asserts what appears to be a state law claim against the Health Department based on a right to authorized vendor status as the assignee to a contract between Hinsdale's predecessor and the Health Department. Finally, Hinsdale explicitly asserts a state law claim against Banco for conversion.

The Health Department, in turn, asserts what it says are state law claims against Hinsdale based on fraud and contract. Specifically, it claims a superior right to the funds because of (1) Hinsdale's allegedly fraudulent negotiation of WIC coupons through use of a fictitious WIC number, and (2) Hinsdale's inability to claim authorized vendor status as the assignee to a contract.

### A.

The court first addresses whether federal question jurisdiction exists because the complaint alleges that federal law creates one or more of the threatened causes of action. Here, the court must focus on Hinsdale's apparent claim that the Health Department has improperly denied it authorized vendor status and on the Health Department's claim that Hinsdale has fraudulently negotiated WIC coupons.

■ Whether or not a statute provides for a private right of action is primarily a matter of determining what courts like to call congressional "intent." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). The legislation establishing the WIC Program does not explicitly create a cause of action in favor of either the state agency charged with administering the program or a food retailer. Nor is there any statutory language from which a private right of action can fairly be inferred. The statute's declaration of purpose, 42 U.S.C. § 1786(a), refers to protection and aid of "pregnant, postpartum, and breastfeeding women, infants, and young children from families with inadequate income." To the

extent that any private remedy might be implicit in the statute, it would presumably be limited to one running in favor of members of this group. *See, e.g., Cannon v. University of Chicago,* 441 U.S. 677, 688–93, 99 S.Ct. 1946, 1953–1955, 60 L.Ed.2d 560 (1979); *cf. Alexander v. Polk,* 459 F.Supp. 883, 889 (E.D.Pa.1978) (implied remedy under the WIC Program for program participants "questionable").

The statute contemplates two possible remedies for improper state agency action. Section 1786(f)(9) requires the agency to "grant a fair hearing ... in accordance with regulations issued by the Secretary, to any applicant, participant, or local agency aggrieved by the action of a State or local agency as it affects participation." Section 1786(f)(11) permits the Secretary to determine whether a state agency has properly administered the program, and authorizes the withholding of "such amounts of the State agency's funds for nutrition services and administration as the Secretary deems appropriate."

■ Neither provision, nor others in the statute, mention food retailers, let alone ascribe to them specific rights. The court finds nothing to show that Congress contemplated granting a direct remedy in federal court to a retailer complaining of the state agency.

While section 1786(f)(15) permits the state agency to recover in cash an overissuance of benefits made as a result of a family member's intentional false statement, there is no corresponding language in the statute giving the state agency a federal cause of action against a retailer for improperly negotiating WIC coupons. This suggests a decision by Congress to relegate a dispute between a vendor and the state agency to state law.

The provisions of the Food Stamp Program, 7 U.S.C. §§ 2011–29, to which the WIC Program is "supplementary," 42 U.S.C. § 1786(c)(1), reinforces this conclusion. The Food Stamp Program provides for administrative sanctions and civil money penalties against food stores that have violated the program, 7 U.S.C. § 2021(a)–(d), jurisdiction in the district courts to en-

force the civil money penalties, *id.* at § 2021(e), and administrative and judicial review of any sanctions, *id.* at § 2023. By failure to enact analogous provisions in the related WIC Program Congress indicated a purpose not to provide a federal cause of action for the claims at issue here.

The court therefore concludes that neither the claims of Hinsdale nor of the Health Department state a federal cause of action under the WIC Program.

This conclusion, however, does not entirely resolve the jurisdictional inquiry. A "well-pleaded" complaint alleging a federal cause of action is sufficient to invoke a federal court's jurisdiction, notwithstanding the ultimate nonexistence of the cause of action, if the claim is not "wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). The court will therefore examine in Part C, *infra,* whether it has jurisdiction because the complaint's unsuccessful assertion of a federal cause of action under the WIC Program nonetheless has sufficient substance so as not to be deemed frivolous.

### B.

The court next addresses, however, whether federal question jurisdiction exists because the complaint alleges state causes of action that include some "substantial" disputed question of federal law as a necessary element. *Franchise Tax Board, supra,* 463 U.S. at 13, 103 S.Ct. at 2848. Here, the court must focus on the Health Department's fraud and contract claims and on Hinsdale's contract claim. Hinsdale's conversion claim is of no jurisdictional significance because federal law issues could only arise as a result of Banco's defense to that claim. *Id.*

The WIC Program regulations, while they provide general guidance for the administration of the program, delegate its running to the state. 7 C.F.R. § 246.3(b). The state must thus develop a plan that covers all operational aspects of the program, including procedures for the certification of program participants, the authori-

zation of food vendors, and the appeal of state decisions. *Id.* at §§ 246.3(c) & 246.-4(a).

The federal regulations require the state agency to contract with its authorized vendors and mandate that those contracts include certain specified provisions. *Id.* at § 246.12(f). One provides that "[a] vendor who commits fraud or abuse of the [WIC] Program is liable to prosecution under applicable Federal, State or local laws." *Id.* at § 246.12(f)(2)(xiv). Another provides that "[t]he State agency may deny payment to the food vendor for improper food instruments or may demand refunds for payments already made on improper food instruments." *Id.* at § 246.12(f)(2)(v). The regulations elsewhere provide for "Participant and vendor sanctions," whereby "[f]ood vendors may be subject to sanctions in addition to, or in lieu of, disqualification ... in case of deliberate fraud." *Id.* at § 246.12(k)(1)(i). These sanctions include possible criminal penalties and claims for improper or overcharged food instruments.

██ The regulations do not spell out a federal legal code to define what shall constitute a fraud or establish federal principles of contract law. These matters are plainly left to state law. The federal regulations do not add to or alter the essential nature of a claim by a state agency based on fraud. A court need not interpret the regulations in order to resolve the dispute. The fact that a fraudulent scheme involves federally-funded food coupons does not make the claim arise under federal law. *Cf. Merrell Dow Pharmaceuticals Inc., supra,* —— U.S. ——, 106 S.Ct. at 3229, 3235–37 & nn. 11 & 12, 92 L.Ed.2d 650 (1986) ("the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction"); *Cowan v. United States,* 172 F.Supp. 291 (S.D. N.Y.1959) (court declines to find federal question jurisdiction in an interpleader action "merely because a federal statute is involved").

██ A claim by the Health Department that it is entitled to the funds based on Hinsdale's alleged lack of authorized vendor status presents an issue of state contract law. If, as Hinsdale says, its predecessor was an authorized vendor from whom Hinsdale obtained the WIC number, that predecessor must have been a party to a contract with the Health Department. Pursuant to 7 C.F.R. § 246.12(f)(2)(xix), that contract would have had to include provisions to the effect that "[t]he food vendor shall notify the State agency when the vendor ceases operations or ownership changes," and "[t]he contract or agreement is null and void if the ownership changes."

Whether or not Hinsdale could have received an operational WIC number by assignment is thus simply an issue of contract interpretation. That the contract contains provisions in part mandated by federal regulation but using terms referable to state law does not transmogrify the Health Department's claim into a federal claim. *Cf. Jackson Transit Authority v. Local Division 1285,* 457 U.S. 15, 102 S.Ct. 2202, 72 L.Ed.2d 639 (1982) (§ 13(c) of the Urban Mass Transportation Act of 1964 does not create federal causes of actions for breaches of collective-bargaining agreements with federally-mandated provisions).

██ Nor is it significant that a court may have to determine whether Hinsdale is what the regulations call an "authorized food vendor." Authorization is an issue the regulations leave to the state. The Health Department is thus charged with designating such vendors, supervising and reviewing their performance and qualifications, and if necessary, imposing sanctions upon them, including the stripping of their authorized status, all pursuant to procedures that the state designs and runs. *See* 7 C.F.R. § 246.12(e), (g), (j), (k) & (s). Food vendors who are adversely affected by agency action are relegated by 7 C.F.R. § 246.18 to state procedures for a fair hearing. *See* N.Y. Administrative Code, title 10, §§ 60–1.1 to 60–1.8.

██ There is no compelling reason of federal judicial policy for this court to decide the state law issues presented. A state's participation in the WIC Program is voluntary, and each state that does partic-

ipate is required to draw up its own plan of operation and administration. 42 U.S.C. § 1786(f). Under these circumstances, the need for uniform interpretation or the development of a body of federal common law often cited in support of taking federal jurisdiction of state causes of action presenting substantial federal questions is nowhere present.

For the foregoing reasons this court concludes that none of the alleged state causes of action include as a necessary element a substantial issue of federal law sufficient to give this court jurisdiction.

### C.

 It remains for the court to determine whether it nonetheless has jurisdiction because the complaint's assertion of a federal cause of action under the WIC Program is nonfrivolous. As stated earlier, *see* Part A, *supra,* a determination that there is no private right of action under a federal statute generally is not determinative of the question whether the court has subject matter jurisdiction over the cause of action pleaded. *See, e.g., Fogel v. Chestnutt,* 668 F.2d 100, 105–07 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 (1982). A "well-pleaded" complaint alleging a federal cause of action is sufficient in and of itself to invoke a federal court's jurisdiction unless the claim is "wholly insubstantial and frivolous." *Bell v. Hood, supra,* 327 U.S. at 682–83, 66 S.Ct. at 776.

It is not entirely clear when the courts will deem a complaint "frivolous." *See, e.g., Yazoo County Industrial Development Corp. v. Suthoff,* 454 U.S. 1157, 102 S.Ct. 1032, 71 L.Ed.2d 316 (1982) (Rehnquist, J., dissent from denial of *certiorari* ). But apparently the only cases which have rejected jurisdiction on the ground of frivolity are those where judicial precedent has settled the unavailability of the particular cause of action. *See, e.g., Gentile v. Wallen,* 562 F.2d 193, 195 (2d Cir.1977); *Nolan v. Meyer,* 520 F.2d 1276, 1278 (2d Cir.), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *O'Neill v. Maytag,* 339 F.2d 764, 766 n. 3 (2d Cir.1964)

("[s]ince the result in this case is not directly required by precedents of this court or of the Supreme Court, the complaint cannot be considered frivolous"). *But see Dreyfus v. Von Finck,* 534 F.2d 24, 28 (2d Cir.) (allegation of federal claim pursuant to Military Law 59 found to be frivolous), *cert. denied,* 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976).

 Where, as here, it would require an exceedingly dubious reading of the WIC Program to hold that it established a cause of action in either Hinsdale or the Health Department, it might be warranted to deem the claim "frivolous." But the court has not found any case prior to this one holding that neither claimant has a cause of action based on the legislation establishing the WIC Program. The language of the opinion in *Fogel, supra,* persuades the court that it should be slow to dismiss for lack of jurisdiction claims purportedly made under federal law and that the wiser course is to take jurisdiction and dismiss for failure to state a claim. This court should not by confusing jurisdiction with the merits make the same mistake for which the Supreme Court has repeatedly chided lower courts.

 The distinction is essentially one without a difference in the present case because it is plain that even if the court has jurisdiction it should dismiss the complaint on the merits insofar as it purports to state a federal claim. Of course, when the court accepts jurisdiction it must decide whether to accept pendent jurisdiction of state law claims. But where the only federal claim is dismissed on a preliminary motion, pendent jurisdiction is rarely appropriate, *Nolan, supra,* 520 F.2d at 1280, and in any event, a matter directed to the court's discretion. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### II

The court declines to exercise its pendent jurisdiction. The court notes that the parties are not prejudiced by this action because each is a New York citizen who is subject to the personal jurisdiction of the New York State courts, and New York

Civil Practice Law § 1006 explicitly provides for actions in interpleader.

The complaint is dismissed. The interpleaded funds—$70,885.10—shall be released back into Banco's custody.

So ordered.