**24 HOUR FUEL OIL CORP., Plaintiff,**

**v.**

**The LONG ISLAND RAIL ROAD COMPANY and The Metropolitan Transportation Authority, Defendants.**

**Civ. A. No. CV–95–2703 (DGT).**

United States District Court, E.D. New York.

Oct. 24, 1995.

Carl S. Levine & Associates, P.C., Roslyn, NY, for Plaintiff.

Long Island Rail Road, Jamiaca, NY, for Defendant.

## MEMORANDUM AND ORDER

TRAGER, District Judge:

This action is before the court on plaintiff's, 24 Hour Fuel Oil Corp.'s (24 Hour), motion for summary judgment and defendants', Long Island Rail Road's (LIRR) and Metropolitan Transportation Authority's (MTA), cross-motion for summary judgment. The plaintiff requests summary judgment and a permanent injunction to reinstate the award of its first contract bid because plaintiff was the lowest possible bidder in that process and that process was valid and fair. Defendants contend that the MTA is a separate legal entity from the LIRR, and consequently, MTA is wrongly named in this action, and should be dismissed. Further, LIRR claims that there is no federal jurisdiction in this case because no federal question exists. In addition, defendants maintain that plaintiff has not exhausted all of its administrative remedies and in fact has a moot claim since plaintiff was awarded the contract in the second round of bids. Although the court finds no merit to this mootness defense, the court concludes that plaintiff has failed to plead a valid cause of action.

### Background

In May 1995, plaintiff, 24 Hour received an invitation to bid on supplying LIRR with diesel fuel for a three year period referred to

as Inquiry ME39–6396. To ensure all bidders would bid on a level playing field, the inquiry required that the basis for the price quote was Platt's *Oilgram Price Report.* Yakobowicz's Aff. at ¶¶ 3–6. In every city, Platt's solicits different vendors and makes an editorial decision whether or not to include a price received. *Id.* at ¶¶ 9–10. Platt's prices are reported on various bases. The "U.S. Tank Car Truck Transport" or "rack" posting is a listing of the highest and lowest prices charged by the vendors at bulk storage terminals. The "spot" or "barge" basis reports the highest and lowest prices charged to buy the product in a particular harbor. *Id.* at ¶¶ 13–15.

LIRR's inquiry required using the low rack price posted in Platt's on May 17, 1995 and requests a mix of diesel fuels and kerosene. *Id.* at ¶¶ 29–30. In LIRR's 3(g) Statement, it explains that prior to opening the bids, LIRR did not know if the rack postings were "anything but reliable and reflective of the conditions in the marketplace." Def.'s 3(g) Stmt. at ¶ 11. On May 17, 1995, Platt only posted one vendor's price for kerosene, RAD's. *Id.* at ¶ 33. Prior to the opening of the bids, no objections were made by any bidders regarding the posting specifications. *Id.* at ¶ 51. However, after the bids were open, a representative of Coastal Oil called LIRR and complained that there was only one posting in Platt's rack price list and informed LIRR of an alternative listing, the barge posting. According to Sam Yakobowicz, president and owner of 24 Hour: "Coastal, by running to the LIRR, has taken the term 'sore loser' to new heights." *Id.* at ¶¶ 52–54.

In response to plaintiff's allegations that Coastal Oil was acting inappropriately in calling LIRR and informing it of the peculiarity in the listing, LIRR explained that it is not uncommon for bidders to request information about the bid and that during these calls LIRR often learns information they otherwise would not know. Sparks Aff. at ¶¶ 25–6.

In the inquiry, LIRR had set forth a specific formula to determine the lowest bid. *Id.* at ¶ 16. Six companies bid for LIRR's Inquiry. 24 Hour posted the lowest bid, $120,000.00 lower than the nearest competitor. *Id.* at ¶¶ 39–42. Instead of accepting 24 Hour's bid, LIRR canceled the inquiry and called for a re-bid. *Id.* at ¶¶ 44–46. LIRR insists that it never officially calculated the bids to determine a single bid number because it had been decided that the contract was not going to be awarded. Sparks Tr. at 155–56.

According to Michael Sparks, the manager of procurement-equipment for the LIRR, upon learning that only one company's price was listed in Platt's from Mr. Joe Colonel, at Coastal Oil, and confirmed by, Keller, an editor at Platt's:

> the LIRR determined that it was in our best interest and the public interest to utilize a posting that was not subject to information provided by a single supplier. Obviously, with only a single company supplying key posting information, the possibility that uncontrolled price swings could occur is very real. Sparks Aff. at ¶¶ 23–25.

24 Hour points out that no one told Sparks that Platt's Tank Car posting for # 1 diesel fuel, Metro N.Y., was "no longer representative of the market place." Levine's Aff. at ¶ 17.

Sparks then spoke with his supervisor, Mr. Garrison, expressing his concerns about the inquiry and prepared spread sheets with the price of # 1 and # 2 diesel fuels based on the low posted prices for both rack and barge. Upon reviewing these charts with Mr. Garrison, they agreed that LIRR should reject the bids and re-bid using the barge postings. Sparks Tr. at 96. Plaintiff objects to the accuracy of the charts claiming that because 24 Hour was able to lower the price through certain calculations, the spread sheets cannot be relied upon. Levine's Aff. at ¶ 50.

Sparks further stated: "[I]f LIRR did not re-bid the fuel contract, RAD Oil [the company whose price was listed in Platt's] would be in a position to unduly control the price paid for # 1 diesel locomotive fuel by the LIRR for the next three years. There also would be the potential for collusion between suppliers." Sparks Aff. at ¶ 31.

Upon receipt of the second invitation to bid, 24 Hour contacted LIRR to determine why the first bid was refused. On June 30, LIRR received a timely bid protest on behalf of 24 Hour Fuel Oil Corp, Sparks Aff. at ¶ 52, contending that LIRR's decision to cancel the first bid and re-bid was "arbitrary and unlawful." Yakobowicz's Aff. at ¶ 3. The LIRR denied the protest by letter dated July 14, 1995. Sparks Aff. at ¶ 55. On July 26, 1995, 24 Hour appealed LIRR's denial of its bid protest. *Id.* at ¶ 61. LIRR responded to plaintiff's appeal on August 8, 1995 refusing to rescind the prior rejection of plaintiff's protest. *Id.* at ¶ 64.

On August 11, 1995, LIRR extended the 1992 contract under "all of the original contract terms." Yakobowicz's Aff. at ¶ 69. Then, according to 24 Hour, on August 22, 1995, LIRR awarded the 1995 contract to it but back dated the contract to August 13, 1995 and required the "spot price" to be used based on NY/Boston barge. *Id.* at ¶ 70. However, LIRR claims that the back dating of the contract was simply an error, explaining that the second page of the Purchase Order awarding the bid has been corrected. It had erroneously stated, "Performance Period is for 36 months from August 13, 1995" when it was intended to become effective on the date of the award which was August 22, 1995. Sparks Aff. at ¶¶ 66–67.

Plaintiff requests the re-bid award be vacated and the first bid be reinstated. Levine's Aff. at ¶ 55. 24 Hour claims that it cannot be awarded monetary compensation because the price of the oil cannot accurately be determined. Plaintiff also claims that the re-bid violated LIRR's own protest procedures. *Id.* at ¶¶ 56–58.

Thus, two related questions must be addressed—whether federal question jurisdiction exists and whether 24 Hour's assertions provide a claim upon which relief can be granted. Only if a federal claim exists would the court have to consider whether a permanent injunction is appropriate in this action.

## Discussion

### (1)

■ Plaintiff claims that the issue of whether there is subject matter jurisdiction has already been decided, and, consequently, did not reply to defendant's assertions that federal question jurisdiction does not exist in this instance. *See* Pl.'s Reply Memo. at 9–11. A court's determination that it has subject matter jurisdiction is res judicata of the issue, but only if the jurisdictional question actually was litigated and expressly decided. *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Clapp v. C.I.R.,* 875 F.2d 1396 (9th Cir.1989) (finding that the right to appeal based on lack of subject matter jurisdiction is not waived after a court enters judgment pursuant to a stipulated settlement, even though the right to appeal the settlement was not reserved); *In the Matter of the Trimble Co.,* 479 F.2d 103 (3d Cir. 1973). Although the matter of federal jurisdiction was briefed in the defendant's opposition memorandum to the plaintiff's request for a preliminary injunction, and the plaintiff's reply memorandum responded to the jurisdictional question, the issue was not expressly decided when the Court denied the preliminary injunction. In fact, at the July 19, 1995 conference, the Court said: "[A]t least for now, I will say there is federal jurisdiction." Tr. at 30. This certainly is not a *final decision on the matter.*

■ Federal question jurisdiction is based on 28 U.S.C. § 1331 which states that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treatises of the United States." For purposes of the matter at issue, a case arises under federal law if from the face of the complaint it is apparent that the plaintiff's cause of action was created by federal law or if a federal law that creates a cause of action is an essential element of plaintiff's claim.[1] *See generally Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Franchise Tax Bd. v. Construction Laborers Vacation Trust,*

---

**1.** This has come to be known as the "well-pleaded complaint rule" because the federal cause of

action must be on the face of the complaint.

463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Verlinden v. Central Bank of Nigeria,* 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983).

Here, 24 Hour's complaint alleges that federal question jurisdiction exists because defendant's conduct at issue is regulated by 49 C.F.R. § 18.36 ("The Common Grant Regulation"). 24 Hour claims: "As grantees ... of the [Federal Transit Administration], the LIRR and MTA are governed by the relevant provisions of 49 C.F.R. Part 18." Compl. at ¶ 39. The complaint then alleges a multitude of deviations from these standards which revolve around LIRR's failure both to award the contract to 24 Hour when it was the lowest bidder and to provide sound documented reasons why the bid was rejected. Compl. at ¶¶ 40–49. 24 Hour interprets 49 C.F.R. § 18.36 to require a contract to be awarded to the lowest bidder after a bidding procedure. Further, the federal regulations only permit rejection of a bid if "there is a sound documented reason," 49 C.F.R. § 18.36(d)(2)(ii)(E), which 24 Hour maintains does not exist here. *See* Compl. at ¶¶ 40–49.

Then, in its reply memorandum, 24 Hour claims that the well pleaded complaint rule is satisfied since "[p]laintiff raises a federal cause of action by alleging that the LIRR, as a grantee of the FTA, is not only subject to [49 C.F.R. § 18], but also [it] has violated [that regulation] by its wrongful refusal to award Plaintiff the contract under Inquiry No. ME39–6359, as the lowest responsible bidder." July 18, 1995 Reply Memo. at 4. And, consequently, plaintiff claims federal question jurisdiction exists.

While 24 Hour believes that it is significant that LIRR has not addressed the "well-pleaded complaint" issue, *see* July 18, 1995

Reply Memo. at 3, the dispositive issue is whether 24 Hour has stated a claim upon which relief can be granted. Consequently, assuming that federal question jurisdiction exists,[2] does 24 Hour have a private right of action under 49 C.F.R. § 18.36?

■■■ Private causes of action are either explicit—a statute or regulation specifically states that individuals have a right to sue under them—or implicit—the apparent intent of Congress or administrative agencies is to have individuals use them to litigate. 49 C.F.R. Part 18 does not explicitly provide for a private cause of action.[3] The Supreme Court has articulated four criteria to determine if an implicit private cause of action has been created in a statute.

> First, is the plaintiff "one of the class for whose special benefit the statute was enacted." Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically of concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? *Cort v. Ash,* 422 U.S. 66, 78 [95 S.Ct. 2080, 2088, 45 L.Ed.2d 26] (1975) (citations omitted).

While these four criteria continue to dictate the manner in which private rights of action are reviewed, the Supreme Court has further emphasized the importance of the legislative intent to create a private right of action. *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979) (after citing the previous standard,

**2.** Interestingly, the one case that 24 Hour relies heavily upon to demonstrate that federal jurisdiction exists similarly dismisses the complaint on the merits because it does not state a federal claim. *Banco de Ponce v. Hinsdale Supermarket Corp.,* 663 F.Supp. 813 (E.D.N.Y.1987).

**3.** This court rejects the contention in defendants' opposition memoranda that "Congress did not confer a federal cause of action through the Code of Federal Regulations." Memo. of Law in Opposition to Pl.'s Motion for a Prelim. Inj'n. at 3; Memo. of Law in Opposition to Pl's Motion for Sum. Judg't at 15. There are a multitude of

cases finding federal causes of action in administrative acts and C.F.R.s. *See, e.g., Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983) (determining that § 10b–5 of the 1934 Securities Exchange Act under Part 17 of the C.F.R. states a private cause of action); *Wellife Products v. Shalala,* 52 F.3d 357 (D.C.Cir.1995) (finding that a Food and Drug Administration regulation limiting ability of vendors to publish health claims on labels of dietary supplements contained a private right of action).

the Court stated: "But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action"). In fact, Justices Scalia and O'Connor stated that they believed that *Touche Ross* had "effectively overruled the *Cort v. Ash* analysis." *Thompson v. Thompson,* 484 U.S. 174, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988) (O'Connor and Scalia, concurring).

▆▆▆ Applying the *Cort v. Ash* factors in this instance, first, the regulation was not created for the plaintiff's special benefit, but rather was made to protect the agency itself. 49 C.F.R. § 18.1 specifically provides that the purpose of this part is to "establish[ ] uniform administrative rules for Federal grants and cooperative agreements and subawards to State, local and Indian tribal governments." This regulation seeks to provide uniformity in the procedure of awarding grants and to protect the agency throughout the procurement process.

Second, there is no indication of administrative intent to create such a remedy. In fact, it is apparent throughout various sections in the regulation that there is no intent to alter, by these provisions, the balance of federal and state law. For instance, in Section 18.36 it states: "Grantees and subgrantees will use their own procurement procedures which *reflect applicable State and local laws and regulations.*" 49 C.F.R. § 18.36(b)(1) (Emphasis added). Similarly, it provides:

> Federal agencies will not substitute their judgment for that of the grantee or subgrantee unless the matter is primarily a Federal concern. Violations of law will be referred to the local, State, or Federal authority having proper jurisdiction. 49 C.F.R. § 18.36(b)(11).

And, furthermore:

> Reviews of protests by the Federal agency will be limited to: violations of Federal law or regulations and the standards of this section (violations of State or local law will be under the jurisdiction of State or local authorities) and violations of the grantee's or subgrantee's protest procedures for fail-

ure to review a complaint or protest. 49 C.F.R. § 18.36(b)(12).

As will be discussed below, the violations alleged by plaintiff should all properly be characterized as violations of state law.

Third, it does not seem to be consistent with the purposes of the regulation to provide a federal cause of action. As noted, the regulation specifically states that actions should be brought either to the federal agency or to state or federal courts depending on whether state or federal law is allegedly violated. 49 C.F.R. § 18.36(b)(11). In addition, 49 C.F.R. § 18.43(a)(5) provides: "If a grantee or subgrantee materially fails to comply with any term of an award ... the awarding agency may take one or more of the following actions, as appropriate in the circumstances: ... Take other remedies that may be legally available." Thus, it appears that the regulations specifically considered jurisdictional issues and decided not to create any specific causes of action but rather to rely on traditional jurisdictional bases.

Finally, in considering the last of the *Cort v. Ash* factors, this cause of action could have been heard in an Article 78 proceeding in New York state courts or if, as plaintiff maintains, there is a violation of federal law here, then the federal agency can review the protests according to 49 C.F.R. § 18.36(b)(12) (Reviews of protests by the Federal agency will be limited to: Violations of Federal law or regulations and the standards in this section ... and Violations of the grantee's or subgrantee's protest procedures for failure to review a complaint or protest.) Thus, contrary to plaintiff's contentions, LIRR's rejection of their protest to the bid cancellation could be reviewed without the use of federal courts.

This conclusion is reenforced when one examines closely the specific violations alleged and how they occurred. They are better addressed under the state regulations than under the federal regulations, and, consequently, there is no need to create a federal cause of action. 24 Hour contends that LIRR's actions in terminating the first bidding procedure without awarding a contract violated the federal regulations. While the federal regulation is vague, it allows for bids

to be terminated for a "sound documented reason." 49 C.F.R. § 18.36(d)(2)(ii)(E). This term is otherwise undefined. Normally, whether such a documented reason exists would, at least initially, be determined by a state or local agency. The New York state rules discuss termination, as well, allowing it "when it is in the public interest to do so," Public Authorities Law § 1265–a(2)(a), and further explains that the authority would not be obligated to seek new bids and would be able to evaluate the bids on the basis of costs or savings. *Id.* There are similar provisions in Public Authorities Law § 1209(7)(a).

Furthermore, the propriety of the rejection of bids has been addressed in the state courts. In *Conduit and Foundation Corp. v. Metropolitan Transportation Authority,* 66 N.Y.2d 144, 495 N.Y.S.2d 340, 485 N.E.2d 1005 (1985), the Court of Appeals upheld the Transit Authority's rejection of all bids where there was a rational basis for expecting lower bid prices upon re-advertisement even though after the bids were entered the transit authority met separately with the bidders. *See also Tri–State Aggregates Corp. v. Metropolitan Transportation Authority,* 108 A.D.2d 645, 485 N.Y.S.2d 754 (1st Dep't 1985) (holding that the MTA correctly rebid the contract since it had reserved the right to reject bids); *Fischbach and Moore Inc. v. N.Y.C. Transit Authority,* 79 A.D.2d 14, 435 N.Y.S.2d 984 (2d Dep't 1981) (allowing agency to withhold a contract pending postbid negotiations with low bidder). Thus, it appears that the state is quite experienced at determining whether the LIRR's rejection of the bids for fear of collusion (and consequently higher prices) is "in the public interest". Thus, the cause of action is traditionally, and should be, reserved to the states.

To infer a private right of action from § 18.36 this court would have to be convinced both that Congress accorded the FTA the authority to establish private rights of action

and that the FTA intended to create such a right through this section. No such indication can be found here. Consequently, this action should be dismissed for failure to state a claim as defendant's motion requests.[4]

## (2)

■ In dismissing the action without denying jurisdiction, the court must also decide whether to accept supplemental jurisdiction of state law claims. Because the federal claim is dismissed on summary judgment motion, supplemental jurisdiction is rarely appropriate, *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.) *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975), and always discretionary. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Furthermore, the Supreme Court held that supplemental jurisdiction's justification:

> lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims ... Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. *Id.* at 726, 86 S.Ct. at 1139.

Similarly, in *Dahlberg v. Becker,* 581 F.Supp. 855, 865 (N.D.N.Y.1984) the court dismissed the federal claim and noted: "Where the main action has been dismissed before trial, dismissal of the ancillary state claims is particularly appropriate." And, the Fifth Circuit has likewise stated in *Joiner v. Diamond M. Drilling Co.,* 677 F.2d 1035, 1042–43 (5th Cir.1982):

**4.** There are many cases involving federal regulations which are dismissed for failure to state a claim. *See, e.g., Clark v. Velsicol Chemical Corp.,* 944 F.2d 196 (4th Cir.1991) (OSHA shipping regulations for hazardous materials did not provide a private cause of action for employees of parcel service injured by a leaking package); *Utley v. Varian Assoc., Inc.,* 811 F.2d 1279 (9th Cir.1987) (executive order creating affirmative action program did not provide a private right of action); *J.A. Jones Constr. Co. v. City of New York,* 753 F.Supp. 497 (S.D.N.Y.1990) (EPA procurement regulations incorporated into contract did not create a private right of action); *John Doe Corp. v. Miller,* 499 F.Supp. 378 (E.D.N.Y. 1980) (tax rule granted no substantive rights to disclosure, thus no federal right was violated and regulation itself did not provide such a right).

**400**

If the interests of judicial economy are no longer advanced by the retention of ancillary claims, the state law actions ought to be dismissed ... Where the main federal action has been settled prior to trial, considerations of judicial efficiency and economy can no longer justify the continued exercise of federal jurisdiction over ancillary state law claims and considerations of comity and federalism militate in favor of dismissal.

Here, no justification for maintaining the state actions can be found.

The court has some sympathy for plaintiff's argument that any victory it might obtain in state court might well be pyrrhic because of the well-known backlog of civil appeals in the Appellate Division, Second Department. Delays in hearing civil appeals are well known. As plaintiff may not be entitled to monetary damages, *See Conduit and Foundation Corp., supra,* but only the reinstatement of the original award on a prospective basis, a good portion of the three year contract will no doubt have expired by the time any favorable decision is rendered. Thus, were it clear that LIRR violated state law in its action here, the court would be inclined to proceed on the merits pursuant to the supplemental jurisdiction provision of 28 U.S.C. § 1367. However, as this court reads the state cases, there is little assurance that plaintiff will prevail under state law. *See Conduit and Foundation Corp., supra; Tri-State Aggregates Corp., supra; Fischbach and Moore Inc., supra.* Indeed, this case raises difficult policy questions for state authorities. On one hand, there is a desire to get the lowest price. And, on the other hand, the state's long term interests in attracting bidders from the private sector require that its bidding processes not be set aside unless there is sound reasons for doing so. How to weigh these interests in this case is a question best determined by the state courts and not by a federal judge guessing how a state court would resolve this question of state law in a case where no federal question remains. Thus, supplemental jurisdiction is denied as well.

**Conclusion**

Because there is no private right of action under 49 C.F.R. § 18.36, plaintiff has failed to state a claim upon which relief can be granted. Consequently a permanent injunction cannot be granted. Defendant's cross-motion for summary judgment, which is properly characterized as a motion to dismiss for failure to state a claim, should be granted since there is no claim upon which relief can be granted.

Ordered that the defendants' motion for summary judgment is granted for the reasons set forth. The Clerk of the Court shall issue a judgment which dismisses the complaint.

SO ORDERED.